(98 App. Div. 17.)

### ROSENBERG v. HEIDELBERG.

(Supreme Court, Appellate Division, First Department. November 18, 1904.)

1. MASTER AND SERVANT—ACTIONS FOR WAGES—EVIDENCE—PRIOR RELATION OF PARTIES.

In an action for services rendered during a certain year, for which defendant agreed to pay plaintiff 25 per cent. of the profits of defendant's business during that year, where defendant alleged that plaintiff was employed at an annual salary, and that for many years prior to the year in question he was engaged at the same work as during that year, plaintiff could show his relation to defendant's business during prior years, and his compensation during those years, based upon an allowance to him of a proportion of the profits.

2. PLEADING—SEPARATE COUNTS—ALLEGATION—TIME OF COMPELLING ELECTION.

Where a complaint in an action for services contained two counts, the first alleging an express contract and the second a quantum meruit, it was not error to deny a motion to compel plaintiff to elect on which count he would proceed until the case had developed so as to enable it, in view of the whole case, to pass intelligently upon the subject.

3. MASTER AND SERVANT—ACTION FOR SERVICES—NEGLIGENCE.

In an action for services, where the complaint alleged a special contract, and the answer set up a special contract differing in its provision from that alleged in the complaint, evidence of the value of plaintiff's services, irrespective of a special contract, was admissible as affecting the probability of the respective versions of the parties as to the nature and character of the contract actually made.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Henry Rosenberg against Isaac N. Heidelberg. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Affirmed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
William N. Cohen, for respondent.

PATTERSON, J. The plaintiff, in his complaint, set up two causes of action: First, upon a special contract, whereby he agreed to render service to the defendant during the year 1899 as "credit man, confidential man, and general manager of the defendant's business." He alleges that the defendant agreed to pay him for his service a sum equal to 25 per cent. of the profits of the defendant's business, during the year ending on the 31st of December, 1899. He also alleges performance of the contract on his part by rendering the service required, and that 25 per cent. of the profits for that year was $75,000, and that he received no part thereof, except the sum of $13,932. For the second cause of action he sues upon a quantum meruit, claiming that the reasonable worth of his services during the year 1899 was $75,000, for which he had received $13,932, and he demands judgment for the difference between $75,000 and the amount received by him on account, with interest upon such balance. The answer of the defendant contains a denial of the allegations of the complaint respecting the contract set up by the plaintiff, but admits the plaintiff was paid $13,932, and then, as to the second cause of action, admits the performance of service by the plaintiff and the payment of $13,932, but denies the value of the service to be as claimed. As a separate defense to both causes of action, the defendant avers that the plaintiff was employed by him during the period embraced between the 1st day of November, 1898, and the 1st day of January, 1900, and for many years prior thereto, and between the dates named was engaged in the performance of duties "which were in their general nature the same duties which the plaintiff performed for the defendant for many years prior to the period mentioned," and asserts that it was agreed and understood between the plaintiff and himself that during the period from November, 1898, to January, 1900, the plaintiff was to receive a salary of $12,000 a year.

At the trial the plaintiff had a verdict for $52,578.50, and from the judgment entered on that verdict and from an order denying a motion for a new trial this appeal is taken. There are no exceptions to the charge of the trial justice nor to refusals to charge.

There was a sharp conflict of evidence respecting the existence of an agreement between the parties as to the plaintiff's compensation for the year 1899, and as to the terms and conditions of his employment. The jury found that it was agreed that he should receive 25 per cent. of the profits of the defendant's business for the period named in the complaint, and there is sufficient evidence to justify their finding on that issue of fact. It cannot be said that the verdict in this regard is against evidence, but it is claimed that improper evidence was admitted in support of the plaintiff's claim on that issue. The trial justice allowed the plaintiff to show his relation to the defendant's business in prior years, and to give proof as to the compensation he received for his service during those years, based upon the allowance to him of a proportion of profits as compensation. That evidence was objected to on the ground that it related to independent contracts or independent relations not connected with the defendant's firm as it existed when the contract alleged in the complaint was made. But upon the issue as made and tried the evidence was admissible. It is stated in the answer that from the 1st of November, 1898, to the 27th of January, 1900, the plaintiff was engaged in the performance of duties for the defendant of the same general nature as those performed for the defendant for many years prior to that period. It is a case, then, in which, under the circumstances, this evidence was proper, for it tended to show that the agreement alleged in the complaint was of the same character as agreements between the parties for preceding years, and therefore was, in a sense, corroborative of the plaintiff's claim. Or, in other words, the probability of the defendant having agreed to give the plaintiff a proportion of profits for the year 1899 as compensation for his services is supported by the fact that some such arrangement had been had with the plaintiff in antecedent years.

After the commencement of the trial, and during its progress, the defendant moved to compel the plaintiff to elect upon which cause of action he would proceed. The motions were denied at first, and evidence was taken of the value of the plaintiff's service during the year 1899. At the close of the proofs the motion to compel the plaintiff to elect was renewed, whereupon the plaintiff stated that he would elect to proceed on the express contract, and the case was submitted to the jury on that cause of action alone. It was not error for the court to deny the motion when it was first made, or until the case had developed in such a way as to enable the trial judge, in view of the whole case, to pass intelligently upon the subject. But there remained in the case evidence as to the value of the service, irrespective of a special contract, and it is claimed that that evidence should have been stricken out, as it might have influenced the jury. This, however, is a case such as is referred to in Dodge v. Weill, 158 N. Y. 350, 53 N. E. 33, where it is said:

"Even in a case where both parties admitted there was a contract for service but each denied the special agreement alleged by the other as to the

amount to be paid therefor, it was held proper for either to prove the value of the services as it bore on the probability as to which version was true"— citing Barney v. Fuller, 133 N. Y. 605, 30 N. E. 1007; Insurance Company v. Weide, 78 U. S. 438, 440, 20 L. Ed. 197.

Here, by the pleadings which were before the court for its guidance, the plaintiff asserted one contract and the defendant set up another. We think the evidence was properly retained in the case as affecting the probability of the respective versions of the parties as to the nature and character of their contract.

There are no other exceptions that require consideration, but it is strenuously insisted that, even assuming that the contract was made as claimed by the plaintiff, the amount of the verdict is largely in excess of 25 per cent. of the profit for the year 1899. The defendant admits a profit for that year of $101,000. The plaintiff claims that the net profits of the business for that year were $230,000. It is insisted by the defendant that there is no testimony to show that the profits for that year were as claimed by the plaintiff. The court charged the jury that the defendant admitted that the profits were $101,000, and that the plaintiff claimed they were $230,000, and it is nowhere intimated nor suggested on the record that that was not a proper statement of the respective claims. There is no criticism of the charge, and no request made upon the subject of profits, but it was left to the jury to determine what they were; and, if they found the defendant was liable for 25 per cent. thereof, they were instructed to deduct the sum of $13,932.65, the amount which the plaintiff received during the year 1899. The question, then, remains whether there was evidence to show that those profits were as claimed by the plaintiff. He testified concerning them, and various statements of account were put in evidence—as, for instance, the aggregate of the debit side of the profit and loss account, the merchandise account on the credit side of the profit and loss account, and the inventory on the credit side of that account. The plaintiff testified concerning the manner in which profit of $230,000 was made up, and the details were put before the jury in figures in his testimony. If those details were wrong, the defendant was in the possession of his own books, and from them could have shown the incorrectness of the plaintiff's method of computing profit. It is claimed by the defendant that that incorrectness is sufficiently shown by the accounts introduced, and that a dissection of the exhibits of the plaintiff establishes that there was an item of $136,000, at least, which should have been deducted from profits as proved by the plaintiff; that item of $136,000 being the amount of an inventory of 1898. The plaintiff's claim is that this item had already been deducted in his computation. There is an item of $40,000 carried into the profit and loss account on account of sales of merchandise for 1898, and the amount of that item was ascertained after an allowance for that merchandise. The plaintiff was familiar with the books of the defendant, and his computations were apparently made from what he knew of the contents of those books. He testified that he made up this account of profit in the same way and on the same basis used for the ascertainment of profit by the defendant in his business in preceding years, and that is uncontradicted. The evidence in the case with respect to profit might have been made more definite, and it may

be unfortunate for the defendant that the case was not more closely tried on that subject, but it was allowed by him to go to the jury without more exact data, and it cannot be said that the verdict in its amount was not supported by evidence upon which the jurors could find as they did.

The judgment and order appealed from should be affirmed, with costs.

HATCH and LAUGHLIN, JJ., concur.

INGRAHAM, J. I am unable to agree to the affirmance of this judgment. The cause of action which was submitted to the jury was based upon a contract whereby it is alleged that the defendant promised to pay to the plaintiff for his services rendered to the defendant from the 1st day of November, 1898, to the 31st day of December, 1899, 25 per cent. of the profits of the defendant's business during the year ending on the 31st day of December, 1899. The plaintiff, who had acted as bookkeeper and general manager for the defendant, was called as a witness, and testified to the making of the contract, and, the jury having found a verdict in his favor, upon this appeal I will assume that the complaint was made as alleged in the complaint. Under the contract, however, the amount the plaintiff was entitled to recover depended upon the amount of profits that were realized by the defendant in his business for the year ending December 31, 1899. The burden of proof was upon the plaintiff to show the amount of such profits, and that he undertook to do. He testified that he did not make up the statement of the profits for the year 1899; that the profit and loss account was contained in a private ledger, in which was posted the balance of a number of accounts from the general ledger, and thus the profits of the business were ascertained, but that at the time the plaintiff left in January, 1900, this profit and loss account had not been made up for the year, 1899. The plaintiff then introduced a statement made by the defendant as to assets and liabilities of the firm's on January 1, 1900. That statement was that the firm had merchandise on hand of the value of $460,000, and other items making a total of $1,015,000; liability for merchandise $90,000—a surplus of $925,000. To this was added the surplus in the retail store of $125,000, making a gross total of surplus of $1,050,000. The plaintiff then read from the deposition of the defendant taken upon an examination before trial that the expenses for the year 1899 were $150,000. The plaintiff was then recalled, and was asked to make up from these statements the amount of the profit for the year 1899. He made up such a statement based upon the admission of the defendant that the merchandise on hand on the 1st day of January was $460,000. He also testified that in ascertaining the profits for the year 1899 there was to be deducted from that amount $120,000 for unchecked and memorandum bills, leaving merchandise on hand of the value of $340,000; that there was to be added to this amount the sum of $40,000 on account of sales of merchandise, and from that amount there was to be deducted the expenses of the business, $150,000, which would make the profit for 1899 $230,000; and this appears to be the only evidence offered by the plaintiff upon which the

jury could find the amount of the profits for the year 1899. I think this was an incorrect method of ascertaining the profits of the business for a particular year. There is nothing to show that the amount of merchandise on hand on December 31, 1899, was paid for out of the profits of that year. Ordinarily, the stock of a merchant would represent capital, and not profits. The profits for the year were represented by the difference between the gross value of the merchandise sold, less the cost of the merchandise and the expenses of conducting the business. An examination of the testimony has failed to disclose any evidence to show that the gross amount of this merchandise on hand on the 1st of January, 1899, had any relation to the profits from the business during the year 1899. There was no evidence of the total sales for that year, of the cost of the goods sold, so that the profits would be ascertained by deducting from the difference between the gross sales and the cost of the goods sold the expenses of the business.

The plaintiff put in evidence the balance sheet of the year 1898. From this it appears that at that time there was merchandise on hand of $136,003.55, and there was also an item of "Chambers Street Store," $35,086.21. If these two items represented the amount of merchandise on hand on the 1st of January, it may be that from this statement, in the absence of evidence that the defendant had contributed any capital to the business during the year, the difference between these two amounts and the amount of $460,000, being $288,910.24, was added to the merchandise account from the profits of the year, and would form a basis from which such profits could be ascertained. Upon the trial, however, it was conceded by the defendant that the profits of the defendant's business for the year 1899 were $101,000, and, the jury having found that the contract was made as claimed by the plaintiff, the plaintiff was entitled to 25 per cent. of that amount, which is $25,250. From that amount there must be deducted $13,937.65, the amount admitted to have been received by the plaintiff during the year, which would leave a balance due him of $11,312.35; and on the finding of the jury the plaintiff was entitled to a judgment for that amount, but I cannot find in this record any evidence to justify the jury in finding that the profits exceeded this amount admitted by the defendant.

My conclusion therefore is that the judgment must be reversed, and a new trial ordered, with costs to the defendant to abide the event, unless the plaintiff stipulate to reduce the verdict to $11,312.35, and upon the plaintiff so stipulating the judgment should be reduced to that sum, and affirmed, without costs of this appeal.

McLAUGHLIN, J., concurs.